70 F.3d 1282
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Lindsey D. SCOTT, Plaintiff-Appellant,
v.
Shirley S. CHATER, Commissioner of Social Security,[1] Defendant-Appellee.
 No. 95-7015.
 United States Court of Appeals, Tenth Circuit.
 Nov. 24, 1995.
 
 Before TACHA and BARRETT, Circuit Judges, and BROWN,*** Senior District Judge.
 ORDER AND JUDGMENT[2]
 BARRETT, Senior Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R.App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Claimant Lindsey D. Scott appeals the district court's order affirming the decision of the Secretary of Health and Human Services denying his applications for disability and supplemental security income benefits. Claimant contends that the Secretary's decision is not supported by substantial evidence and the ALJ failed to evaluate properly his mental impairments.
 
 
 3
 Claimant alleges disability since January 1, 1989, due to pain in his hip, leg, back, and chest, breathing problems, and depression. He claims his physical problems are a result of two automobile accidents, one in 1957 and another in 1960. In the first accident, he incurred severe injuries to his left hip and right leg, as well as a cerebral concussion. In the 1960 accident, he reinjured the left hip, fractured his pelvis, broke his left elbow and five ribs, sustained a soft tissue injury to his left knee, and suffered lung collapse, a ruptured diaphragm, and internal injuries to his liver, colon, stomach, and bowel.
 
 
 4
 Claimant filed his initial application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. 423(a)(1), on February 26, 1990, alleging disability since January 1, 1989. He filed his application for supplemental security income benefits (SSI) under Title XVI, 42 U.S.C. 1382(a)(1) on February 13, 1990, also alleging disability since January 1, 1989.
 
 
 5
 Both applications were denied following a hearing before an administrative law judge on September 27, 1991. The Appeals Council remanded the case, directing the ALJ to (1) obtain additional evidence regarding claimant's mental impairments, (2) acknowledge and consider the findings and conclusions of Cary Bartlow, Ph.D., (3) consider the effect of claimant's exertional and nonexertional impairments on his occupational base in accord with Social Security Ruling 83-12, and (4) complete a Psychiatric Review Technique Form pursuant to 20 C.F.R. 416.920a(b)(3).
 
 
 6
 Following a supplemental hearing on January 21, 1993, the ALJ found that, although claimant's impairments prevented him from returning to his past relevant work as a roughneck in the oil fields, he retained the ability to perform all of the medium, light, and sedentary unskilled jobs suggested by the vocational expert, and therefore, was not disabled. The Appeals Council denied further review. Claimant appeals, and we reverse.
 
 
 7
 We review the Secretary's decision to determine whether the factual findings are supported by substantial evidence and whether correct legal standards were applied. Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir.1994). "We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met." Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800-01 (10th Cir.1991). Legal error in weighing the evidence is grounds for reversal. Id. at 801.
 
 
 8
 Where there is evidence of a disabling mental impairment, the Secretary must evaluate the mental impairment pursuant to the procedure set forth in 20 C.F.R. 404.1520a, 416.920a. Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1048 (10th Cir.1993). This procedure requires the Secretary to fill out a Psychiatric Review Technique Form (PRT). The required level of severity to consider a depression disabling is met if the requirements of both part A and part B of 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.04 are met. First, the Secretary must determine the existence of "certain medical findings which have been found especially relevant to the ability to work," (Part A criteria). 404.1520a(b)(2). Second, the Secretary must evaluate and rate the claimant's ability to function despite the impairment (Part B criteria). 404.1520a(b)(3). We closely examine the record as a whole to determine whether substantial evidence supports the ALJ's conclusions recorded on the PRT. See Cruse v. United States Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir.1995).
 
 
 9
 At the time claimant was initially considered for benefits, he submitted a report prepared in June 1991, by Cary Bartlow, Ph. D., a licensed counsellor and rehabilitation consultant. Following an interview and a battery of tests, Dr. Bartlow opined that claimant was approaching advanced age without any transferable skills to sedentary work and a work history of only manual labor. He concluded that claimant could not stand for more than one hour and was limited in bending, stooping, squatting, climbing, balancing, overhead work, and carrying weights in excess of fourteen pounds. Appellant's App. at 238. He further found that claimant could not work around dust, fumes, odors, or in cold or wet environments. Id. at 239.
 
 
 10
 He reported that his interview with claimant and the relevant test results revealed that claimant suffered "substantial depression," which would affect claimant's attention to detail, ability to work around people or in stressful environments, and his attention span and ability to concentrate. Dr. Bartlow ultimately concluded that in his physical and mental condition, claimant was unemployable. Id.
 
 
 11
 In the initial denial of benefits, the ALJ determined that Dr. Bartlow's opinion was not supported in the record, and because Dr. Bartlow was not a medical doctor, his opinions were unpersuasive. Id. at 247. In its remand decision, the Appeals Council, citing 20 C.F.R. 404.1513, stated that, as a licensed psychologist, Dr. Bartlow was an acceptable source of medical evidence and directed the ALJ to consider Dr. Bartlow's findings and conclusions in that light. Id. at 262-63.
 
 
 12
 Following a supplemental hearing, the ALJ again denied benefits, stating that there was "a good deal of other evidence found in this file which would totally refute what Dr. Bartlow's conclusions were." Id. at 29. Without specific reference to the refuting evidence, the ALJ found Dr. Barlow's conclusions to be "incredible." Id. at 30.
 
 
 13
 The ALJ ordered consultative psychological examinations of claimant by Dr. Harald Krueger, a psychiatrist, and Dr. Richard Swink, a psychologist. On September 9, 1992, Dr. Swink conducted a lengthy examination of claimant, including numerous testing measurements. The MMPI-2 test revealed that claimant "likely has serious psychological and emotional problems," leading Dr. Swink to conclude that claimant was "highly depressed with obsessiveness about what he feels is his hopeless situation." Id. at 284. He further concluded that claimant required psychological therapy and medication for his lack of concentration, memory, and attention problems. Id. at 285.
 
 
 14
 On a "Medical Assessment of Ability To Do Work-Related Activities (Mental)" form, Dr. Swink stated that claimant exhibited a "severe level of depression," which "controls his life." Id. at 287-88. He rated claimant as "fair"[3] on his ability to relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, and to understand, remember and carry out complex or detailed job instructions. He also rated him only "fair" on his ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Id.
 
 
 15
 Dr. Krueger examined claimant at the request of the Secretary on October 3, 1992. Following a very short interview, he concluded that claimant could follow work rules, interact with supervisors, and understand and carry out instructions. He further concluded that claimant could behave in an emotionally stable manner. Id. at 274. On the "Medical Assessment of Ability To Do Work-Related Activities (Mental)" form, Dr. Krueger rated claimant as "good" in all areas except his ability to understand, remember, and carry out complex job instructions, in which he rated claimant as "fair." Id. at 277-78.
 
 
 16
 The ALJ, opining that the reports of Dr. Swink and Dr. Krueger did not "differ greatly," accepted and relied on Dr. Krueger's opinion because "Dr. Krueger is a qualified psychiatrist and did a medical examination on the claimant." Id. at 26. Our review of the record does not support the accuracy of these statements. First, Dr. Swink's assessment of claimant's mental condition and ability to engage in work activities does differ significantly from that of Dr. Krueger. Also, there is no evidence in the record indicating that Dr. Krueger conducted a "medical examination" or any examination or testing of claimant. In fact, claimant complained at the hearing that Dr. Krueger spent only fifteen or twenty minutes with him and he felt rushed. Id. at 84-85. This limited examination does not comply with the Secretary's regulations governing consulting examinations suggesting that a consulting physician or psychologist, performing a psychiatric examination, should spend a minimum of forty minutes with the examinee. 20 C.F.R. 404.1519n(a)(3). Moreover, it appears that Dr. Krueger's opinion was reached without consideration or evaluation of the testing performed by either Dr. Bartlow or Dr. Swink. See Pacheco v. Sullivan, 931 F.2d 695, 697 (10th Cir.1991)(holding that a decision is not supported by substantial evidence if the evidence is merely conclusory or overwhelmed by other evidence).
 
 
 17
 However, relying on Dr. Krueger's opinion, the ALJ completed a PRT form, concluding that although claimant suffered an affective disorder, claimant's mental impairments were not severe and did not meet the listing of impairments found in 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.04. Appellant's App. at 33-35.
 
 
 18
 In Cruse, this court recognized that the evaluation tools used to complete the PRT form do not match those used on the medical assessment forms completed by the consulting health care professionals and stated that the definition of "fair" as found on the medical assessment form is misleading. Id. at 618. We held that the definition of "fair" as "seriously limited but not precluded" is the same as the listing requirements' definition of the term "marked," which would indicate a limitation which is " 'more than moderate, but less than extreme.' " Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.00(C)). We further concluded that "fair," as defined on the medical assessment form, is evidence of disability. Id.
 
 
 19
 Applying Cruse, we conclude that Dr. Swink, based on extensive objective testing, found claimant to be disabled in a majority of the areas used to evaluate his ability to engage in work activities. 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.04(B). However, in his decision, the ALJ stated that Dr. Swink found that
 
 
 20
 claimant could make occupational adjustments, rating him mostly as good with some in the fair range, would be good in making performance adjustments such as understanding, remembering, and carrying out simple job instructions, and fair as far as other jobs were concerned, and that he would be good at making personal/social adjustments such as maintaining personal appearance, and at least fair in behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability.
 
 
 21
 Appellant's App. at 25. The ALJ's conclusions indicate that he based his decision to deny benefits on the mistaken belief that a "fair" rating was evidence of claimant's ability to work. In addition, the ALJ's conclusions not only misrepresent Dr. Swink's findings under Cruse, they also reflect the ALJ's continued disregard for Dr. Bartlow's opinion, even in light of the Appeals Council's directive to do otherwise.
 
 
 22
 Even assuming that claimant's mental impairment does not meet the listing, the evidence supports the existence of a severe nonexertional impairment which must be considered as affecting claimant's residual functional capacity to perform work. See Hargis v. Sullivan, 945 F.2d 1482, 1491 (10th Cir.1991)("The Secretary's regulations indicate that '[t]he determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity when the criteria of the listings for mental disorder are not met or equaled but the impairment is nevertheless severe.' ") (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 12.00(A)).
 
 
 23
 In weighing evidence in disability cases, there are certain rules of law which must be followed. Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir.1988). Although, as required, the ALJ obtained testimony from a vocational expert, see Hargis, 945 F.2d at 1491, his hypothetical questions to the vocational expert lacked any recognition of claimant's mental impairment as characterized by Drs. Bartlow and Swink. "[T]he [Social Security] Act makes clear that the Secretary must consider all relevant medical evidence of record in reaching a conclusion as to disability." Baker v. Bowen, 886 F.2d 289, 291 (10th Cir.1989). " '[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.' " Taylor v. Schweiker, 739 F.2d 1240, 1243 (7th Cir.1984)(quoting Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir.1982)). Where, as here, it is unclear whether the ALJ followed these rules by considering all the proffered evidence, "the proper remedy is reversal and remand." Baker, 886 F.2d at 291.
 
 
 24
 Claimant also argues that the ALJ did not evaluate his physical impairments properly or in accord with the Appeals Council's directive. In light of our remand on claimant's first issue, we do not reach this argument. However, we note that it appears that the ALJ may have ignored medical evidence in the record without explanation and focused unduly on claimant's ability to perform certain daily activities and his failure to seek medical treatment. See Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir.1993)(discussing the proper evaluation of a claimant's pursuit of medical treatment in determining credibility and the proper emphasis on a claimant's daily activities in determining ability to do work activities).
 
 
 25
 Additionally, we note that over the course of the administrative proceedings in this case, claimant's chronological status went from that of a "younger person," to a "person approaching advanced age" at the time of the supplemental hearing, to a person of "advanced age" by the time this matter is considered on remand. Therefore, the Secretary's consideration of claimant's disability claim on remand should be in accord with 20 C.F.R. 416.963(d), which requires that, when performing a step-five evaluation of a person of advanced age with severe impairments and the inability to perform medium work, the Secretary cannot simply identify alternative jobs that the person could perform, but must consider whether claimant's skills are transferable. Id.; see also Nielson v. Sullivan, 992 F.2d 1118, 1121 (10th Cir.1993).
 
 
 26
 Finally, the Secretary should keep in mind that it is now over four years since claimant's eligibility for disability benefits terminated. Claimant alleges he has been disabled since January 1, 1989. He met the special earnings requirements for disability insurance benefits through June 30, 1991. Therefore, to receive disability insurance benefits, claimant has to establish that he became disabled sometime between January 1, 1989, and June 30, 1991. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1347 (10th Cir.1990). Although claimant does not have to establish an onset date between 1989 and 1991 to receive SSI benefits, those benefits are available only after February 13, 1990, the date he filed his application for SSI benefits. See 20 C.F.R. 416.335. The applicable time periods should be considered by the Secretary when making additional findings.
 
 
 27
 In conclusion, we determine that the ALJ's decision was not supported by substantial evidence, was not reached by application of the proper rules, and did not comply with the directives of the Appeals Council on remand. Therefore, we REVERSE the judgement of the United States District Court for the Eastern District of Oklahoma and remand the cause to the district court with directions to REMAND to the Secretary for further proceedings consistent with this order and judgment.
 
 
 
 [1]
 Effective March 31, 1995, the functions of the Secretary of Health and Human Services in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. Pursuant to Fed. R.App. P. 43(c), Shirley S. Chater, Commissioner of Social Security, is substituted for Donna E. Shalala, Secretary of Health and Human Services, as the defendant in this action. Although we have substituted the Commissioner for the Secretary in the caption, in the text we continue to refer to the Secretary because she was the appropriate party at the time of the underlying decision
 
 
 ***
 Honorable Wesley E. Brown, Senior District Judge, United States District Court for the District of Kansas, sitting by designation
 
 
 [2]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [3]
 A rating of "fair" on the ability to do work assessment indicates that claimant's "[a]bility to function in this area is seriously limited but not precluded." Appellant's App. at 277. A rating of "good" indicates that the individual's "[a]bility to function in this area is limited but satisfactory." Id